UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

DNA HEALTH, LLC (NJ),

Plaintiff,

V.

LIV HEALTH LLC, *et al.*,

Defendants.

Civil No. 5:22-cv-00121-GFVT

**MEMORANDUM OPINION**
**&**
**ORDER**

*** *** *** ***

This matter is before the Court on four motions to dismiss filed by Defendants Jeremy Delk, Tru Diagnostics, Inc., Ryan Smith, and DNA Health, LLC (KY). [R. 44; R. 45; R. 46; R. 49.] Plaintiff DNA Health, LLC (NJ), and its founder Michael Antonelli agreed to a series of contracts with the Defendants. The deal provided Mr. Antonelli and DNA New Jersey with supplies and marketing assistance in exchange for payments over time, secured by DNA New Jersey's assets. Eventually, the Defendants purported to exercise their rights under the security agreement, took over the business, and allegedly continued to sell the product. DNA New Jersey filed this lawsuit, which claims that the Defendants broke their deal before they had cause to do so. The Defendants are so confident that they validly exercised their rights under the security agreement that they believe the case should go away. Because the pleading stage is about the availability of a claim, not its merits, the motions to dismiss **[R. 44; R. 45; R. 46; R. 49]** will be **DENIED**.

**I**

This litigation began when a business venture went wrong. Michael Antonelli sells nutraceuticals, which are herbal, dietary supplements. [R. 1 at 4.] To market nutraceuticals to

doctors, Mr. Antonelli created DNA Health, an LLC organized under New Jersey law. *Id.* In July 2021, DNA Health entered into a ten-million-dollar deal with LIV Health and Tailor Made to purchase BPC-157, a nutraceutical. [R. 1 at 4.] As part of the bargain, DNA Health signed a secured note and granted LIV Health a security interest in many of its assets. [R. 38 at 5; R. 1-5; R. 1-6.] DNA Health also signed marketing and consulting agreements with Defendants Deal Media, LLC, and Tru Diagnostics, Inc., to assist with the business venture. [R. 1-3; R. 1-4.]

Before starting DNA Health, Mr. Antonelli worked for BioTE Medical. [R. 25-1 at 5.] Shortly after DNA Health signed its BPC-157 purchase agreement, BioTE Medical sued Mr. Antonelli and DNA Health, claiming that Mr. Antonelli violated a non-compete agreement that prevented him from selling nutraceuticals to its customers. [R. 1 at 5; R. 25-1 at 8.] In January 2022, a Texas court enjoined Mr. Antonelli and DNA Health from selling BPC-157 in competition with BioTE. [R. 1 at 5; R. 25-1 at 8; R. 58-1 at 4.]

In early February 2022, Mr. Antonelli spoke with Defendant Jeremy Delk, a manager of Tailor Made, about the Texas injunction.[1] [R. 27 at 3.] With a payment looming on February 15, Mr. Antonelli admitted that the injunction would likely cause DNA Health to be unable to pay. [R. 38 at 6.] On February 3, Mr. Delk sent Mr. Antonelli an email regarding these conversations. [R. 1-8.] Mr. Delk wrote:

> Per our conversation then, as well as our calls yesterday and notice of fact that DNA Health, LLC will not be paying its note and is trading insolvent, Liv Health llc [sic] hereby accepts this notice and Liv Health, LLC will now take all actions afforded

[1] Mr. Delk is currently serving a three-year term of probation in this District. Judgment as to Jeremy Delk at 2, *United States v. Delk*, No. 3:20-cr-15-GFVT (E.D. Ky. Feb. 26, 2021), ECF No. 30. Mr. Delk pled guilty to unlawfully distributing prescription drugs in violation of 21 U.S.C. § 331(t). *Id.* at 1. The terms of his probation require Mr. Delk to "immediately report [his] interest, either directly or indirectly, in any new business or corporation or the registering of a business or corporation to [his] probation officer" and to "refrain from engaging in an occupation, business, or profession involving the distribution of prescription drugs, either directly or indirectly, without approval by the probation officer." *Id.* at 4. A different LLC, Tailor Made Compounding, LLC, was also a defendant in that case. Judgment as to Tailor Made Compounding LLC, *United States v. Delk*, No. 3:20-cr-15-GFVT (E.D. Ky. Feb. 26, 2021), ECF No. 31.

> to it in order to remedy this event default as laid out in section 8 of the Secured Promissory Note, the Continuing Security Agreement and the APA.

*Id.* at 2.

Mr. Antonelli and DNA Health's attorney disagreed with this assessment. [R. 1-9.] Counsel emailed Mr. Delk on February 3 and claimed that "[m]y client is not in default" and "he has until Friday, February 25th to make his payment . . . given the 10 day grace period . . . ." *Id.* at 2.

Despite Mr. Antonelli's position, Defendant Michael Scanlon formed a second DNA Health, LLC, on February 4, under Kentucky law. [R. 1-10.] Mr. Antonelli alleges that the Defendants began soliciting his clients as early as February 7. [R. 38 at 7.] On March 8, Mr. Delk participated in a deposition related to the Texas litigation. *Id.* at 8; [R. 1-11.] Mr. Delk claimed that Liv Health had control of DNA New Jersey's operations and assets. [R. 38 at 8.] Mr. Antonelli alleges that the Defendants essentially continued to sell DNA New Jersey's products via the new DNA Kentucky entity. *Id.* at 9.

On May 11, 2022, DNA New Jersey filed this lawsuit against DNA Kentucky, Mr. Delk, Mr. Scanlon, and several of the entities associated with the BPC-157 purchase and marketing arrangement. [R. 1.] DNA New Jersey claims that the Defendants breached the terms of the secured promissory note, the security agreement, the asset purchase agreement, the Deal Media marketing agreement, and the Tru Diagnostics consulting agreement. *Id.* at 8–10. On August 22, 2022, DNA New Jersey amended the complaint to allege a claim for unfair competition and trademark infringement in violation of the Lanham Act. [R. 38.]

DNA Kentucky, Ryan Smith, Tru Diagnostics, and Jeremy Delk filed motions to dismiss the complaint, which they renewed in light of the amended complaint. [R. 24; R. 26; R. 27; R. 32; R. 44; R. 45; R. 46; R. 49.] They assert several overlapping arguments regarding the

viability of DNA New Jersey's claims. The motions are now fully briefed and ripe for review. [R. 50; R. 51; R. 52; R. 56 (responses); R. 53; R. 54; R. 55; R. 57 (replies).]

**II**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual allegations to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must provide grounds for his requested relief that are more than mere labels and conclusions. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A "formulaic recitation of the elements of cause of action will not do." *Id.*

The complaint must enable a court to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. To be plausible, a claim need not be probable, but the complaint must show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint that pleads facts that are consistent with but not demonstrative of the defendant's liability "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). The moving party bears the burden of persuading a trial court that the plaintiff fails to state a claim. *Bangura v. Hansen*, 434 F.3d 487, 498 (6th Cir. 2006).

To review a Rule 12(b)(6) motion, courts construe the complaint "in the light most favorable to the plaintiff" and make "all inferences in favor of the plaintiff." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). The Court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Id*. (quoting *Gregory v. Shelby Cnty.*, 220 F.3d 433, 446 (6th Cir. 2000)). Generally, this inquiry does not look beyond the recitations set forth in the complaint itself. *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016). To consider material outside of the pleadings, district courts must treat a motion as brought under Rule 56, which

applies to summary judgment, and accord all parties an opportunity to supplement the record. *Id.* However, "a court may consider exhibits attached to the complaint, public records, items appearing in the record of the case, and exhibits attached to the defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment." *Id.* (citing *Kreipke v. Wayne State Univ.*, 807 F.3d 768, 774 (6th Cir. 2015)).

The instant motions to dismiss discuss the Complaint, the Texas injunction, and several documents attached to the complaint. [*E.g.*, R. 27 at 1, 6, 8.] While these items go beyond the face of the pleading itself, the complaint introduced them into the record and bases some its contents upon them. Accordingly, the Court will apply the traditional Rule 12(b)(6) standard without converting the motions into summary judgment. *Gavitt*, 835 F.3d at 640.

**A**

Counts I through V of the Complaint assert breaches of the various contracts that made up the BPC-157 purchase and marketing arrangement. [R. 38 at 10–12.] Some of the Defendants' arguments attack the facial sufficiency of the claims. [*E.g.*, 32 at 8.] Others challenge the sufficiency of the complaint as applied to individual defendants. [*E.g.*, R. 26 at 8.] None succeed.

**1**

First, the Defendants argue that DNA New Jersey breached their agreement, absolving them from any competing claim for breach. Under Delaware law, "[a] party is excused from performance under a contract if the other party is in material breach thereof."[2] *BioLife Sols., Inc. v. Endocare, Inc.*, 838 A.2d 268, 278 (Del. Ch. 2003). The Promissory Note governing payment

[2] The parties agree that Delaware law governs the contract dispute. [*E.g.* R. 32 at 7; R. 51 at 5.]

of the ten-million-dollar purchase price defined several items as an "Event of Default." [R. 1-6 at 4 ¶ 8.] Failure to make a scheduled payment within a ten-day grace period quailed as default. *Id.* ¶ 8(a). And default occurred if DNA New Jersey "admit[ted] in writing to its inability to pay its debts as and when they become mature, or otherwise bec[ame] insolvent[.]" *Id.* ¶ 8(d).

The Defendants point to two actions that could serve as the first breach. On February 3, 2022, Mr. Antonelli notified the Defendants that the Texas injunction could prevent DNA New Jersey from performing under the contract.[3] [R. 27 at 3; R. 38 at 6.] Then, on February 15, 2022, DNA New Jersey failed to make payment. [R. 27 at 5.] Both arguments fail as they are more appropriate for summary judgment.

**a**

The Defendants believe that Mr. Delk's February 3 email proves DNA New Jersey provided notice of default. [R. 32 at 8.] DNA New Jersey admits that Mr. Antonelli informed Mr. Delk, during a verbal conversation, that the Texas injunction could cause DNA New Jersey to miss a payment. [R. 38 at 6 ¶ 32.] DNA New Jersey does not argue that Mr. Antonelli's verbal notice, if effective, would not amount to a material breach of the contract. Instead, it argues that the contract required notice of default to be in writing. Thus, dismissal turns solely on a legal question: did Mr. Antonelli's verbal representations effectively provide notice of default?

The parties have not satisfyingly answered that question. Neither party provided briefing on whether Delaware law requires strict compliance with a written notice provision in a contract. Many jurisdictions do not. *E.g.*, *New London Tobacco Mkt., Inc. v. Ky. Fuel Corp.*, 44 F.4th

[3] The Complaint describes the date for this notice rather nebulously as "the first days of February." [R. 1 at 5 ¶ 30; R. 38 at 6 ¶ 31.] Mr. Delk memorialized these conversations in an email dated February 3. *Id.* at 6 ¶ 33; [R. 1-8 at 2; R. 27 at 3.] It is sufficient to note that the oral discussions occurred before the February 3 email.

393, 403–04 (6th Cir. 2022) (applying Kentucky law) ("[T]he specifying of a method of giving notice' to terminate a contract 'does not exclude other methods' . . . because 'no one needs notice of what he already knows.'" (quoting *Equitable Life Assurance Soc. of U.S. v. Lawrence*, 563 S.W.2d 717, 719 (Ky. 1978)). A cursory review of Delaware's caselaw reveals some cases that require strict compliance with specified methods of notice. *E.g.*, *PR Acquisitions, LLC v. Midland Funding LLC*, No. 2017-0465-TMR, 2018 Del. Ch. LEXIS 137, at *17–20 (Del. Ch. Apr. 30, 2018) (requiring strict compliance while distinguishing several cases that did not require strict compliance); *AluminumSource, LLC v. LLFLEX, LLC*, No. 18C-07-231, 2023 Del. Super. LEXIS 135, at *50 & n.258 (Super. Ct. Mar. 16, 2023) ("As a matter of law, where the contract specifies what constitutes notice thereunder and dictates how to communicate that notice, strict compliance with the notice provision is necessary."). Other Delaware cases do not. *E.g.*, *HCR-ManorCare v. Fugee*, No. 07C-10-024, 2010 Del. Super. LEXIS 178, at *18 (Super. Ct. Jan. 26, 2010) (holding that verbal notice substantially complied with the contract "despite the Agreement's written notice requirement."). Ultimately, the Court is unwilling to grant a motion to dismiss on an area of law that counsel failed to brief. The parties can revisit the significance of the February 3 email and the conversations that predated it at another time.

Alternatively, the Defendants argue that compliance with the written notice requirement for inability to pay should not be required because notice would have been futile. [R. 32 at 9.] The Defendants claim that DNA New Jersey was insolvent following the Texas injunction. *Id.* at 10. Therefore, they believe that breach of the secured note was inevitable and that waiting for DNA New Jersey to miss its payment would have been pointless. *See id.* at 9–10; [R. 55 at 4–5.]

To accept this argument, the Court would have to assume that DNA New Jersey had no access to revenue or funding other than from sales enjoined by the Texas court. But there are no

facts alleged in the complaint or otherwise in evidence that prove this premise. Perhaps the Defendants will ultimately demonstrate that DNA New Jersey was insolvent. For now, DNA New Jersey claims that it had twenty-two days to find a way to pay when the Defendants took possession of its assets. [R. 38 at 7.] Construed in the light most favorable to the plaintiff, the remaining time implies that DNA New Jersey may have had access to an alternate means of making payment. Ultimately, none of the Defendants' arguments regarding the contract's notice of insolvency provision require dismissal.

**b**

At this stage of litigation, the Defendants' failure to pay argument does not require dismissal. DNA New Jersey's theory of breach is that on February 3, 2022, Mr. Delk, Liv Health, and Tailor Made declared the contract to be in default without cause. [R. 38 at 6.] DNA New Jersey also alleges that Mr. Delk, Liv Health, and Tailor Made took possession of its physical assets at this time, pursuant to the security agreement, also without cause. *Id.* at 6–7. Accepting these allegations to be true, Mr. Delk, Liv Health, and Tailor Made potentially breached the contract as early as February 3.

But the Defendants base this theory of breach on a payment that was nominally due on February 15, subject to a 10-day grace period. [R. 27 at 5.] Recall that the Defendants argue that a prior material breach absolves the non-breaching party from further performance. [*E.g.*, R. 27 at 7.] So, in regard to the missed payment, the Defendants' argument is self-defeating. Construing the complaint in the light most favorable to DNA New Jersey, it is plausible that the Defendants breached before payment was due, absolving DNA New Jersey from the need to pay. Given the standard of review applicable at this point in the case, the failure to pay argument is unavailing.

**2**

Several Defendants rely on an unpersuasive argument that DNA New Jersey caused its own injuries. [*E.g.*, R. 26 at 10.] The Defendants claim that DNA New Jersey collapsed because Mr. Antonelli breached his employment agreement with BioTE, leading to the Texas injunction. *Id.* Because of the injunction, they argue that "DNA Health could not have lost money from a business that was not operating." *Id.* at 11.

Mr. Antonelli's actions may or may not have led to the Texas injunction. To the extent they did, Mr. Antonelli may well have caused DNA New Jersey to lose money. But it is unclear why that should preclude this contract action. Again, DNA New Jersey's claim is that the Defendants exercised their rights under the security agreement before they had cause to do so. Then, Mr. Antonelli argues that the Defendants continued to breach the contract by competing with DNA Health. If these claims are true, Mr. Antonelli would have a right to damages under the contract. It is unclear how DNA Health's diminished value as a business comes into the picture.

**3**

Mr. Delk and Mr. Smith argue that Count III should be dismissed as to them because they did not sign the Asset Purchase agreement in their personal capacity. [R. 55 at 2; R. 26 at 6.] Count III alleges that Mr. Delk and Mr. Smith breached a non-compete clause included in the Asset Purchase Agreement. [R. 38 at 11.] DNA New Jersey claims that Mr. Delk and Mr. Smith's inclusion as named parties in the non-complete clause could serve as evidence that they intended their signatures to bind them in their official and personal capacities. [R. 51 at 6.]

Under Delaware law, "[i]t is a general principle of contract law that only a party to a contract may be sued for breach of that contract." *Wallace v. Wood*, 752 A.2d 1175, 1180 (Del.

Ch. 1999). When an officer enters a corporation into a contract, he is generally presumed not to be a party to the contract, unless he purports to bind himself individually. *See id.* The existence or lack of obligations under the contract that bind the officer can influence a court's decision as to whether the officer purported to be bound. *See Huff Energy Fund, L.P. v. Gershen*, No. 11116-VCS, 2016 WL 5462958, at *7 (Del. Ch. Sept. 29, 2016) ("The Director Defendants were not personally obligated to perform under the contract and cannot be held liable for breach of the contract.").

The non-compete at issue purports to bind several "Restricted Parties," including Mr. Delk and Mr. Smith. [R. 1-2 at 4 ¶ 6(a)(iii).] So long as the Asset Purchase Agreement was not breached, these Restricted Parties agreed "to hold in confidence all Confidential Information and to not disclose, publish or make use of any Confidential Information," "to protect adequately the interest of Purchaser in the Assets," and to not "engage in, have an equity or profit interest in, or render services . . . to any Competing Business." *Id.* ¶¶ 6(b), (c). Based on the plain language of the contract, the parties attempted to create a contractual duty for Mr. Smith and Mr. Delk. While that obligation may or may not have been enforceable against them, it creates a plausible inference that they purported to be bound. *C.f. See Huff Energy Fund*, 2016 WL 5462958, at *7.

Against this, Mr. Delk and Mr. Smith cite to a Sixth Circuit case that explains that "when contracting parties wish to ensure that a corporate officer is bound both in an individual and an official capacity, 'the nearly universal practice is that the officer signs twice—once as an officer and again as an individual.'" *Innovation Ventures, LLC v. Custom Nutrition Labs, LLC*, 912 F.3d 316, 335 (6th Cir. 2018) (quoting *Livonia Bldg. Materials Co. v. Harrison Constr. Co.*, 742 N.W.2d 140, 146 (Mich. Ct. App. 2007)) (applying Michigan law). Even if Michigan law were instructive, the case is not particularly helpful. True, Jeremy Delk's signature only appears on

the contract as a manager of Tailor Made Health, LLC, and Deal Media, LLC. [R. 1-2 at 11.] And Ryan Smith signed as the "VP of business development" of Tru Diagnostics. *Id.* But consistency with a "near universal" practice would only be competing evidence that Mr. Delk and Mr. Smith did not purport to be bound by the agreement. At this stage, the Court does not weigh competing evidence. *Thomas v. Noder-Love*, 621 F. App'x 825, 828 (6th Cir. 2015). Dismissal is inappropriate because Mr. Delk and Mr. Smith's inclusion as purported obligees under the non-compete clause renders DNA New Jersey's breach claim plausible. *See Iqbal*, 556 U.S. at 678.

**4**

Mr. Smith similarly makes an individual argument for dismissal that ventures beyond the standard of review at this stage of the litigation. He asks the Court to consider Mr. Delk's deposition testimony as evidence that he does not own DNA Kentucky. [R. 26 at 8.] In Count III, DNA New Jersey alleges that Mr. Smith violated the non-compete clause through his connection to DNA Kentucky. [R. 38 at 11 ¶ 73.] DNA New Jersey bases this belief on a February 7, 2022, phone call to one of its customers in which a solicitor allegedly claimed that Mr. Antonelli was out of DNA Health and "the new owners are Scanlon and Smith." *Id.* at 7 ¶ 40. However, Mr. Delk testified in a deposition that Liv Health assumed ownership and control of DNA Health New Jersey after the Texas injunction. [R. 26 at 7–8; R. 1-11 at 41.] So, Mr. Smith asks the Court to weigh the competing descriptions of who owned and operated DNA Health after Mr. Antonelli was pushed out.

That is not an appropriate request in a motion to dismiss. At this stage, the Court only considers whether the Plaintiff has provided enough support for its claims to render them plausible. *See Iqbal*, 556 U.S. at 678. It cannot weigh competing pieces of evidence. *Thomas*,

621 F. App'x at 828. Mr. Smith's request goes beyond a Rule 12(b)(6) motion and ventures into territory reserved for a motion for summary judgment. *Id.*

Mr. Smith further complains that the Plaintiff's connection to him, the February 7 phone call, is "hearsay evidence" and "no additional proof . . . exists." [R. 26 at 8.] Mr. Smith claims, without explanation or citation to authority, that "[m]ore evidence of a viable claim is required than this uncorroborated statement . . . ." [R. 54 at 5.] The Court fails to see why more evidence should be required. To consider a motion to dismiss, trial courts accept the factual allegations of a complaint as true. *See Iqbal*, 556 U.S. at 678. Because the plaintiff has not yet had access to discovery, it is unremarkable that a complaint might rely on hearsay evidence. *See Sletten v. LiquidHub, Inc.*, No. 13-civ-1146, 2014 U.S. Dist. LEXIS 94697, at *30 (S.D.N.Y. July 10, 2014). Neither *Iqbal* nor *Twombly* heightened the pleading requirement to require evidence that ultimately would be admissible at trial. *See id.* at *30–31 (citing *Campanella v. Cnty. of Monroe*, 853 F. Supp. 2d 364, 378 (W.D.N.Y. 2012)). Mr. Smith's individual argument for dismissal of the breach claims fails.

**5**

Tru Diagnostics believes that the Complaint's allegations against it are precisely the sort of threadbare recitals that merit dismissal. *See Iqbal*, 556 U.S. at 678; [R. 27 at 6.] The Amended Complaint's charges regarding Tru Diagnostics come down to three sentences. Count V claims "Defendant Tru Diagnostics had a contractual obligation not to compete with Plaintiff for five years." [R. 38 at 12.] "Defendant Tru Diagnostics breached its obligation by rendering services to and/or profiting from a Competing Business." *Id.* Specifically, "[o]n information and belief, Tru Diagnostics provided consultation services to Defendants Liv Health, Tailor Made Health, and DNA Health (KY) . . . ." *Id.* at 9. Tru Diagnostics argues that these

statements do to "allege what services Tru Diagnostics rendered to any competing business, or when these services were rendered." [R. 27 at 7.] Accordingly, Tru Diagnostics believes the complaint is little more than a formulaic recitation of the elements for a breach of contract claim. *See id.* at 6–7. By contrast, DNA New Jersey believes its identification of Liv Health, Tailor Made Health, and DNA Health as the alleged recipients of Tru Diagnostic's competing services is sufficient to survive dismissal. [R. 50 at 4.]

Courts occasionally require pleadings based on information and belief to be accompanied by a statement of facts on which the belief is founded. *E.g.*, *Picard Chem. Profit Sharing Plan v. Perrigo Co.*, 940 F. Supp. 1101, 1127 (W.D. Mich. 1996). However, that rule is generally applied when a heightened pleading requirement is at play, such as when the complaint alleges fraud. *See id.* As DNA New Jersey points out, there is no heightened pleading requirement in this case that would require its claims to be plead with particularity. [R. 50 at 4.]

Despite Tru Diagnostic's concerns, the minimal allegations in the Complaint suffice. [*Contra* R. 53 at 2 ("Simply alleging Tru Diagnostics provided consulting services, without more, is legally insufficient to survive a motion to dismiss.").] The federal pleading requirements do not "require 'detailed factual allegations . . . .'" *Iqbal*, 556 U.S. at 678 (quoting *Twobly*, 550 U.S. at 555). Instead, a complaint merely needs to allege facts that, if true, plausibly entitle the plaintiff to relief. *Id.* at 680.

Here, Tru Diagnostics agreed to refrain from providing consulting services to businesses that manufactured or sold products that compete with those of DNA New Jersey. [R. 1-4 at 4–5 ¶ 9.] The Complaint alleges that Liv Health took control of DNA New Jersey's assets and operations without cause. [R. 38 at 8.] Thereafter, the Complaint claims that an employee of the various defendant entities solicited business from DNA New Jersey's former clients. *Id.* at 7.

Taking the Complaint's allegations as true, Tru Diagnostic's provision of consulting services to these defendant entities would appear to contribute those services to a competing business. That inference is sufficient to render DNA New Jersey's claims plausible. Accordingly, Count V will not be dismissed.

**B**

The Defendants also fail to show why DNA New Jersey's Lanham Act claims should be dismissed. DNA New Jersey argues that the Defendants' ongoing sales of nutraceuticals could cause a false association with its products, in violation of 15 U.S.C. § 1125(a)(1)(A). [R. 38 at 12–13.] DNA New Jersey also claims to have a trademark that these continued sales infringe upon. *Id.* at 13. The arguments for dismissal focus on the effects of the Texas injunction. Essentially, the Defendants believe that the injunction prevented DNA New Jersey from doing business at all, eliminating the possibility of consumer confusion between their products. [*See* R. 44 at 4; R. 49 at 4.] But they fail to provide any citation to authority that a temporary cessation in selling a product requires dismissal of Lanham Act claims.

"To state a claim for trademark infringement under the Lanham Act, a plaintiff must allege facts establishing that: (1) it owns the registered trademark; (2) the defendant used the mark in commerce; and (3) the use was likely to cause confusion." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (citing 15 U.S.C. § 1114(1)). "Similarly, a person engages in unfair competition if he or she, 'on or in connection with any goods or services, . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact' in a manner that is 'likely to cause confusion . . . .'" *Bird v. Parsons*, 289 F.3d 865, 877 (6th Cir. 2002) (quoting 15 U.S.C. § 1125(a)(1)(A)). Notably, both claims require

a determination that the defendant's use of the device creates a "likelihood of confusion." *Hensley Mfg.*, 579 F.3d at 609 n.5.

None of the defendants provide any authority that the owner of a trademark who is temporarily barred from selling a product cannot show a likelihood of confusion. And the argument is not particularly intuitive. The Lanham Act "protects the rights of the first user of a trademark . . . ." *Streetwise Maps v. VanDam, Inc.*, 159 F.3d 739, 742 (2d Cir. 1998). It does so by "barring a later user from employing a confusingly similar mark, likely to deceive purchasers as to the origin of the later user's product, and one that would exploit the reputation of the first user." *Id.* It is unclear how the effects of the Texas injunction would preclude a subsequent purchaser from being confused and basing a purchase on DNA New Jersey's reputation. As the parties bearing the burden of persuasion in a Rule 12(b)(6) motion, it was the Defendants' task to explain this issue, preferably by citation to some form of authority. *See Bangura*, 434 F.3d at 498. They did not, so their argument for dismissal fails.[4]

**III**

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

1. Defendant Jeremy Delk's Motion to Dismiss **[R. 44]** is **DENIED**;
2. Defendant Tru Diagnostics, Inc.'s Motion to Dismiss **[R. 45]** is **DENIED**;
3. Defendant Ryan Smith's Motion to Dismiss **[R. 46]** is **DENIED**; and

[4] The Defendants make one other argument for dismissal of the Lanham Act claims. "A federal trademark infringement and/or federal unfair competition claim that fails to allege the effective dates and name of the trademark is . . . insufficient to survive a motion to dismiss." [R. 44 at 5.] Again, the Defendants fail to cite to any authority that shows the relevance of this argument to a Lanham Act claim. Nor do they attempt to connect this complaint to any of the elements of the underlying causes of action. Because the Defendants failed to develop the argument sufficient to enable meaningful review, it receives none. *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court . . . to put flesh on its bones.").

4. Defendant DNA Health, LLC (KY)'s Motion to Dismiss **[R. 49]** is **DENIED**.

This the 28th day of September 2023.

Gregory F. Van Tatenhove
United States District Judge