UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

|  |  |  |
|---|---|---|
| DNA HEALTH, LLC (NJ), | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 5:22-cv-00121-GFVT |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | **&** |
| LIV HEALTH LLC, *et al.*, | ) | **ORDER** |
| | ) | |
| Defendants. | ) | |
| | ) | |

*** *** *** ***

This matter is before the Court on Counter-Defendant Michael Antonelli's Motion to
Dismiss the Counter-Plaintiff's First Amended Counterclaims. [R. 68.] Plaintiff DNA Health,
LLC (NJ) and its founder Michael Antonelli originated this action in 2022 when they filed a
complaint against a number of defendants whom DNA Health New Jersey and Mr. Antonelli
allege breached numerous contractual agreements. In February 2023, Defendants Liv Health
LLC and Tailor Made Health LLC filed a counterclaim against Mr. Antonelli. Following Mr.
Antonelli's first motion to dismiss, Liv Health and Tailor Made filed an Amended Counterclaim.
Mr. Antonelli now moves to dismiss Liv Health and Tailor Made's Amended Counterclaim.
Because the pleading stage is about the availability of a claim, not its merits, Mr. Antonelli's
motion to dismiss will be **DENIED**.

**I**

This litigation began when a business venture went wrong.[1] Michael Antonelli sells
nutraceuticals, which are herbal, dietary supplements. [R. 1 at 4.] To market nutraceuticals to

---

[1] For consistency and clarity, these background facts are adopted from a previous Memorandum Opinion and Order
issued by this Court. [*See* R. 78 at 1-3.]

doctors, Mr. Antonelli created DNA Health, an LLC organized under New Jersey law. *Id.* In July 2021, DNA Health entered into a ten-million-dollar deal with Liv Health and Tailor Made to purchase BPC-157, a nutraceutical. [R. 1 at 4.] As part of the bargain, DNA Health signed a secured note and granted Liv Health a security interest in many of its assets. [R. 38 at 5; R. 1-5; R. 1-6.] DNA Health also signed marketing and consulting agreements with Defendants Deal Media, LLC, and Tru Diagnostics, Inc., to assist with the business venture. [R. 1-3; R. 1-4.]

Before starting DNA Health, Mr. Antonelli worked for BioTE Medical. [R. 25-1 at 5.] Shortly after DNA Health signed its BPC-157 purchase agreement, BioTE Medical sued Mr. Antonelli and DNA Health, claiming that Mr. Antonelli violated a non-compete agreement that prevented him from selling nutraceuticals to its customers. [R. 1 at 5; R. 25-1 at 8.] In January 2022, a Texas court enjoined Mr. Antonelli and DNA Health from selling BPC-157 in competition with BioTE. [R. 1 at 5; R. 25-1 at 8; R. 58-1 at 4.]

In early February 2022, Mr. Antonelli spoke with Defendant Jeremy Delk, a manager of Tailor Made, about the Texas injunction. [R. 27 at 3.] With a payment looming on February 15, Mr. Antonelli admitted that the injunction would likely cause DNA Health to be unable to pay. [R. 38 at 6.] On February 3, Mr. Delk sent Mr. Antonelli an email regarding these conversations. [R. 1-8.] Mr. Delk wrote:

> Per our conversation then, as well as our calls yesterday and notice of fact that DNA Health, LLC will not be paying its note and is trading insolvent, Liv Health llc [sic] hereby accepts this notice and Liv Health, LLC will now take all actions afforded to it in order to remedy this event default as laid out in section 8 of the Secured Promissory Note, the Continuing Security Agreement and the APA.

*Id.* at 2.

Mr. Antonelli and DNA Health's attorney disagreed with this assessment. [R. 1-9.] Counsel emailed Mr. Delk on February 3 and claimed that "[m]y client is not in default" and "he

has until Friday, February 25th to make his payment . . . given the 10 day grace period . . . ." *Id.* at 2.

Despite Mr. Antonelli's position, Defendant Michael Scanlon formed a second DNA Health, LLC, on February 4, under Kentucky law. [R. 1-10.] Mr. Antonelli alleges that the Defendants began soliciting his clients as early as February 7. [R. 38 at 7.] On March 8, Mr. Delk participated in a deposition related to the Texas litigation. *Id.* at 8; [R. 1-11.] Mr. Delk claimed that Liv Health had control of DNA New Jersey's operations and assets. [R. 38 at 8.] Mr. Antonelli alleges that the Defendants essentially continued to sell DNA New Jersey's products via the new DNA Kentucky entity. *Id.* at 9.

On May 11, 2022, DNA New Jersey filed its lawsuit against DNA Kentucky, Mr. Delk, Mr. Scanlon, and several of the entities associated with the BPC-157 purchase and marketing arrangement. [R. 1.] DNA New Jersey claims that the Defendants breached the terms of the secured promissory note, the security agreement, the asset purchase agreement, the Deal Media marketing agreement, and the Tru Diagnostics consulting agreement. *Id.* at 8–10. On August 22, 2022, DNA New Jersey amended the complaint to allege a claim for unfair competition and trademark infringement in violation of the Lanham Act.[2] [R. 38.]

Subsequently, the Court granted leave for Liv Health and Tailor Made to file a counterclaim against Mr. Antonelli. [R. 62; *see also* R. 63.] Following Mr. Antonelli's motion to dismiss their original counterclaim, Liv Health and Tailor Made filed an Amended Counterclaim, which appeared to fix many of the deficiencies that plagued their original counterclaim. [R. 68.] Mr. Antonelli then moved, pursuant to Rule 12(b)(6), to dismiss this Amended Counterclaim. [R. 69.] The Court turns now to that pending motion.

---

[2] The Court considered DNA New Jersey's claims when it issued a previous Memorandum Opinion and Order denying four separate motions to dismiss. [R. 78.]

**II**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual allegations to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must provide grounds for his requested relief that are more than mere labels and conclusions. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A "formulaic recitation of the elements of cause of action will not do." *Id.*

The complaint must enable a court to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. To be plausible, a claim need not be probable, but the complaint must show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint that pleads facts that are consistent with but not demonstrative of the defendant's liability "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). The moving party bears the burden of persuading a trial court that the plaintiff fails to state a claim. *Bangura v. Hansen*, 434 F.3d 487, 498 (6th Cir. 2006).

To review a Rule 12(b)(6) motion, courts construe the complaint "in the light most favorable to the plaintiff" and make "all inferences in favor of the plaintiff." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). The Court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Id.* (quoting *Gregory v. Shelby Cnty.*, 220 F.3d 433, 446 (6th Cir. 2000)). Generally, this inquiry does not look beyond the recitations set forth in the complaint itself. *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016). To consider material outside of the pleadings, district courts must treat a motion as brought under Rule 56, which applies to summary judgment, and accord all parties an opportunity to supplement the record. *Id.* However, "a court may consider exhibits attached to the complaint, public records, items

4

appearing in the record of the case, and exhibits attached to the defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment." *Id.* (citing *Kreipke v. Wayne State Univ.*, 807 F.3d 768, 774 (6th Cir. 2015)).

Mr. Antonelli's motion to dismiss discusses the Amended Counterclaim, the Texas injunction, and several documents attached to the Amended Counterclaim.  [*E.g.*, R. 69 at 1, 4-7.]  While these items go beyond the face of the pleading itself, the counterclaim bases some of its contents upon them.  Accordingly, the Court will apply the traditional Rule 12(b)(6) standard without converting the motions into summary judgment.  *Gavitt*, 835 F.3d at 640.

## A

Counts 1 and 4 of Liv Health's and Tailor Made's Amended Counterclaim allege fraudulent misrepresentation and negligent misrepresentation.  [R. 68 at 16, 19.]  In Kentucky, "a plaintiff claiming fraudulent misrepresentation must plead the following elements: that the defendant made a '(a) material representation (b) which is false (c) known to be false or made recklessly (d) made with inducement to be acted upon (e) acted in reliance thereon and (f) causing injury.'"  *Affiliated FM Ins. Co. v. LNR Partners, LLC*, Civil Action No. 5:21-233-DCR, 2023 U.S. Dist. LEXIS 22911 at *18 (E.D. Ky. Feb. 10, 2023) (quoting *PCR Contrs., Inc. v. Danial*, 354 S.W.3d 610, 613 (Ky. Ct. App. 2011)).  Negligent misrepresentation occurs when a defendant "(1) in the course of his business or a transaction in which he has a pecuniary interest, (2) supplies false information for the guidance of others in their business transactions, if (3) he fails to exercise reasonable care or competence in obtaining or communicating the information and (4) the plaintiff justifiably relied on the information."  *Id*. at 23 (quoting *Republic Bank & Trust Cov. v. Bear, Stearns & Co*., 707 F. Supp. 2d 702, 713 (W.D. Ky. 2010)).  "The Kentucky

Court of Appeals has explained that an 'elementary element of negligent misrepresentation is justifiable reliance upon the information.'" *Id.* (quoting *Ann Taylor, Inc. v. Heritage Ins. Servs., Inc.* 259 S.W.3d 494, 496 (Ky. Ct. App. 2008)).

According to Liv Health and Tailor Made, Mr. Antonelli communicated to them that he had no restrictive post-employment obligations to his former employer BioTE that would impact DNA New Jersey's entrance into an Asset Purchase Agreement ("APA"). As it turns out, allege Liv Health and Tailor Made, Mr. Antonelli did in fact owe certain duties to his former employer BioTE. *Id.* Liv Health and Tailor Made claim that they reasonably relied on Mr. Antonelli's statements, and that Mr. Antonelli's misrepresentations caused them pecuniary injury.

In his motion to dismiss, Mr. Antonelli argues that Liv Health and Tailor Made "have not shown that Antonelli's alleged statements were fraudulent or misleading." [R. 69 at 4.] Mr. Antonelli cites *Ashland, Inc. v. Oppenheimer & Co., Inc.*, which recognizes that actions for fraud and negligent misrepresentation in Kentucky require proof of an actionable misrepresentation. *See* 648 F.3d 461 (6th Cir. 2011). According to Mr. Antonelli, Liv Health and Tailor Made have not alleged any actionable misrepresentation because "none of the allegations made [] constitute a misrepresentation under the Counterclaims as pled." [R. 69 at 4.]

While it may ultimately be proved that Mr. Antonelli is correct, Mr. Antonelli's arguments do not warrant dismissal at this juncture. At the motion to dismiss stage, this Court must construe the counterclaim "in the light most favorable to the plaintiff" and make "all inferences in favor of the plaintiff." *DirecTV, Inc.*, 487 F.3d at 476. That's not to say that the Court assesses the truthfulness of the factual allegations or makes any determinations as to what is indeed fact versus what is fiction. Rather, the Court considers whether the pleaded facts, if they were true, support a plausible claim. *See Ashcroft*, 556 U.S. at 678.

6

Here, upon review of their counterclaim, it appears that Liv Health and Tailor Made have adequately pled factual allegations that satisfy the elements of fraudulent misrepresentation and negligent misrepresentation. Regarding fraudulent misrepresentation, Liv Health and Tailor Made allege that Mr. Antonelli made multiple representations regarding the duties he owed, or lack thereof, to BioTE. [R. 68 at ¶¶ 21-26.] These representations were material because they induced Liv Health and Tailor Made to enter into the APA with Mr. Antonelli. *Id*. at ¶¶ 27, 64. Liv Health and Tailor Made further allege that Mr. Antonelli's material representations were false, and that he knew they were false, citing as support Mr. Antonelli's agreements with BioTE. *Id*. at ¶¶ 66-67. Liv Health and Tailor Made also plead that Mr. Antonelli made the false representations with the intent to induce Liv Health and Tailor Made to enter the APA, and that they did in fact rely on his representations in their decision to sell the BPC-157 assets to Mr. Antonelli over other buyer candidates. *Id*. at ¶¶ 21-26, 40, 67-68. And finally, Liv Health and Tailor Made allege that Mr. Antonelli's misrepresentations ultimately caused an injury, inferentially pecuniary, for which they are seeking damages. *Id*. at ¶ 69.

The counter-plaintiffs' negligent misrepresentation claims arise from the same representations discussed directly above. Regarding negligent misrepresentation, Liv Health and Tailor Made allege that DNA New Jersey and Mr. Antonelli had a pecuniary interest in the APA transaction because it was expected to generate revenue and dividends for DNA New Jersey and Mr. Antonelli. *Id*. at ¶¶ 52, 86. Liv Health and Tailor Made further allege that Mr. Antonelli's false representations were provided in direct response to Liv Health and Tailor Made's questions, and that those misrepresentations guided Liv Health's and Tailor Made's decision on whether to transact with Mr. Antonelli. *Id*. at ¶¶ 20-26, 87-88. And Liv Health and Tailor Made directly allege that Mr. Antonelli failed to exercise reasonable care by failing to disclose all of his post-

employment agreements with BioTE.  *Id*. at ¶ 89.  Lastly, Liv Health and Tailor Made plead, again, that they relied on Mr. Antonelli's misrepresentations in executing the APA and that those misrepresentations ultimately caused injury to their business.  *Id*. at ¶¶ 90-91.

Mr. Antonelli argues that, despite these pleadings, Liv Health's and Tailor Made's claims are not "actionable" under *Ashland* because Mr. Antonelli's representations were not material. [R. 74 at 2-3.]  In *Ashland*, the plaintiff's alleged that the defendant negligently misrepresented details related to auction rate securities, which the defendant brokered.  648 F.3d at 465-67.  The Sixth Circuit affirmed the lower court's determination that the plaintiff's claim was not "actionable" because the plaintiff did not allege facts that it justifiably relied on the defendant's ambiguous representations, nor did plaintiffs allege facts indicating that the defendant supplied false information.  *Id*. at 473.  According to Mr. Antonelli, the non-solicitation agreement shows that Mr. Antonelli was permitted to sell products to anyone but BioTE customers.  Mr. Antonelli argues that, because neither Liv Health nor Tailor Made were selling to BioTE customers, his statements regarding restrictive post-employment covenants, even if false, could not have been material to Liv Health and Tailor Made.  *Id*.  Put another way, his misrepresentations would not have caused damage to the counter plaintiffs.

Unfortunately for Mr. Antonelli, his reliance on *Ashland* misses the mark.  The plaintiff's claim in *Ashland* was not "actionable" because they failed to plead facts demonstrating justifiable reliance.  In the present case, Liv Health and Tailor Made repeatedly allege facts that indicate reliance upon Mr. Antonelli's representations.  The *Ashland* plaintiff's claim was further unactionable because they failed to allege facts that the defendant supplied false information. Context matters in this comparison.  In *Ashland*, the "false information" was actually vague statements that the defendant made stating that their auction rate securities were safe and liquid.

8

648 F.3d at 472-73.  Because the *Ashland* plaintiffs failed to provide any facts demonstrating that the securities were illiquid rather than liquid, they could not plausibly claim that the defendants had made false statements.  *Id.* at 473.  The present case is different.  Here, the Court understands Mr. Antonelli's position that none of his representations were false.  But Liv Health and Tailor Made have provided enough factual allegations to create a plausible inference that Mr. Antonelli's representations were materially false.

Ultimately, Liv Health and Tailor Made have specifically pled each element required for fraudulent and negligent misrepresentation actions, and provided enough factual allegations that would plausibly support those claims.  Whether those factual allegations hold enough support in the record to be deemed true is a question for a later time.  Mr. Antonelli may certainly raise arguments at the summary judgment stage as to the truth of the counterclaims.  But here, the facts as alleged suggest plausible claims for fraudulent misrepresentation and negligent misrepresentation.  Mr. Antonelli's motion to dismiss Counts 1 and 4 cannot, therefore, succeed.

**B**

Count 2 of Liv Health's and Tailor Made's Amended Counterclaim alleges theft by Mr. Antonelli.  In Kentucky, theft occurs when someone unlawfully:  "(a) [t]akes or exercises control over moveable property of another with to deprive him or here thereof; or (b) [o]btains immovable property of another or any interest therein with intent to benefit himself or herself or another not entitled thereto."  Ky. Rev. Stat. Ann. § 514.030 (West 2023).  Kentucky law permits a person injured by the violation of KRS § 514.030 to recover civil damages from the offender.  Ky. Rev. Stat. Ann. § 446.070 (West 2023).  A right of civil action exists "only for persons suffering an injury as a direct and proximate result [of a violation]; and then only for such damages as they may actually sustain."  *Graham v. City of Hopkinsville*, Civil Action No. 5:12-

cv-23, 2013 U.S. Dist. LEXIS 69007 at *33 (W.D. Ky. May 15, 2013) (quoting *Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 800 (Ky. 2004)).

Liv Health and Tailor Made allege that Mr. Antonelli committed theft by unlawfully withdrawing $100,000 from DNA New Jersey's bank account. [R. 68 at ¶¶ 71, 73.] In addition to the APA, which provided the terms of sale of the BPC-157 assets from Liv Health and Tailor Made to Mr. Antonelli and DNA New Jersey, the parties agreed to a Secured Term Promissory Note. *Id*. at ¶ 30. The Promissory Note provided the terms in which DNA New Jersey would pay the $10,000,000 purchase price to Liv Health. *Id*. According to Liv Health and Tailor Made, a default notice by DNA New Jersey under the APA would trigger provisions of the Promissory Note and Security Agreement that required withdrawn money to be held in trust for Liv Health and Tailor Made. *Id*. at ¶ 49. Liv Health and Tailor Made claim that Mr. Antonelli's $100,000 withdrawal was unauthorized because Mr. Antonelli had previously notified Liv Health and Tailor Made that DNA New Jersey would be defaulting on the Promissory Note. *Id*. at ¶¶ 53-54. In other words, the money within DNA New Jersey's account was, at that point, to be held in trust for Liv Health and Tailor Made—Mr. Antonelli's withdrawal of funds, for his personal use, therefore, constituted theft. *Id*. at ¶¶ 53-54, 71-73.

In support of his motion to dismiss, Mr. Antonelli asserts that a cause of action under KRS § 446.070 requires plaintiffs to show a "special injury." [R. 69 at 8 (citing *Stringer*, 151 S.W.3d at 799-800).] Mr. Antonelli argues that Liv Health and Tailor Made have not alleged actual evidence of a "special injury." *Id*. at 8-9. He also claims that Liv Health and Tailor Made have pled neither proximate cause nor "explained how the alleged violation of the theft statute proximately caused a specific special injury." *Id*. at 9.

10

The Court finds Mr. Antonelli's arguments on this point unpersuasive. First, he misconstrues *Stringer*'s interpretation of what KRS § 446.070 requires for plaintiffs to maintain a cause of action. *Stringer* makes clear that a violation of the statute is not itself a sufficient catalyst upon which to base a civil claim under KRS § 446.070. Rather, a plaintiff must be able to show that *they themselves* suffered an injury because of the statutory violation. *See Stringer*, 151 S.W.3d 799-800 (emphasis added). This requirement is not unlike the first element of this Court's standing doctrine, which requires a plaintiff to show injury in fact. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

Here, Liv Health and Tailor Made have alleged facts indicating that Mr. Antonelli's withdrawal caused a pecuniary injury because the $100,000, at least according to Liv Health and Tailor Made, actually belongs to them. Moreover, the Court finds that the counter-plaintiffs have sufficiently pled facts that would establish proximate cause. Because Liv Health and Tailor Made have sufficiently pled their theft claim, Mr. Antonelli's motion to dismiss Count 2 of the Amended Counterclaim will be denied.

## C

Count 3 of the Amended Counterclaim alleged that Mr. Antonelli converted money that was the legal property of Liv Health and Tailor Made. In Kentucky, "[c]onversion is an intentional tort that involves the wrongful exercise of dominion and control over the property of another." *Thomas v. Walker*, No. 6:19-CV-226-REW, 2022 U.S. Dist. LEXIS 59723 at *35 (E.D. Ky. March 31, 2022) (quoting *Jones v. Marquis Terminal, Inc.*, 454 S.W.3d 849, 853 (Ky. Ct. App. 2014)). A plaintiff is required to show these elements:

(1) the plaintiff had legal title to the converted property;
(2) the plaintiff had possession of the property or the right to possess it at the time of the conversion;

(3) the defendant exercised dominion over the property in a manner which denied the plaintiff's rights to use and enjoy the property and which was to the defendant's own use and beneficial enjoyment;
(4) the defendant intended to interfere with the plaintiff's possession;
(5) the plaintiff made some demand for the property's return which the defendant refused;
(6) the defendant's act was the legal cause of the plaintiff's loss of the property; and
(7) the plaintiff suffered damage by the loss of the property.

*Id*. at *35-36 (citations omitted).

Liv Health's and Tailor Made's conversion counterclaim is based on the same factual allegations that support their counterclaim for theft—that the funds in DNA New Jersey's reserve bank account were, following DNA New Jersey's notice of default, the legal property of Liv Health and Tailor Made. The counter plaintiffs allege that: (a) they had a right to possess the $100,000; (b) Mr. Antonelli exercised dominion over the funds, as evidenced by his withdrawal of the funds; (c) Mr. Antonelli intentionally withdrew those funds in order to deprive Liv Health and Tailor Made use of the funds; (d) they issued a demand that Mr. Antonelli return the money; and (e) Mr. Antonelli's refusal to return the funds is the legal and proximate cause for Liv Health's and Tailor Made's deprivation of those funds, which has resulted in monetary damages. [R. 68 at ¶¶ 76-80.]

Mr. Antonelli argues that Liv Health's and Tailor Made's conversion counterclaim must fail because the counter plaintiffs fail to allege all the elements of conversion. [R. 69 at 9.] Specifically, Mr. Antonelli argues that Liv Health and Tailor Made fail to provide facts showing that they requested Mr. Antonelli to return the $100,000. *Id.* Liv Health and Tailor Made respond by pointing to paragraph 49 of their amended counterclaim, which states that on February 16, 2022, after DNA New Jersey defaulted on the Promissory Note, Liv Health sent notice to DNA New Jersey that, pursuant to the Security Agreement, the funds in DNA New Jersey's account were to be held in trust and delivered to LIV Health. [R. 70 at 22-23.] Mr.

Antonelli asserts that "such a letter referencing an obligation to return funds is not at all the same as requesting the return of funds." [R. 74 at 4.]  He maintains that no request for the return of funds was actually made.  *Id*.

The Court, again, finds Mr. Antonelli's argument unpersuasive.  There is no doubt that Liv Health and Tailor Made have adequately pled each and every element of a conversion claim. As to the factual allegations regarding a demand of return, the Court finds, upon review of the amended counterclaim and attached document referenced therein [R. 68-12] that Liv Health has provided plausible evidence that would have sufficiently notified DNA New Jersey that the funds were to be held in trust and delivered to Liv Health.  Mr. Antonelli's attempt to distinguish "a letter referencing an obligation to return funds" and a letter requesting the return of funds is too cute by half.  For all intents and purposes, Liv Health's letter was a request for the return of funds.  For that reason, Mr. Antonelli's motion to dismiss the conversion counterclaim must fail.

### D

The fifth and final count of Liv Health's and Tailor Made's Amended Counterclaims asserts a cause of action for unjust enrichment.  [R. 68 at 21.]  In Kentucky, an unjust enrichment claim requires proof of the following elements:  "(1) benefit conferred upon defendant at plaintiff's expense; (2) a resulting appreciation of benefit by defendant; and (3) inequitable retention of [that] benefit without payment for its value."  *Walters v. Gill Indus., Inc*., 586 F. Supp. 3d 633, 645 (E.D. Ky. 2022) (quoting *Superior Steel, Inc. v. Ascent at Roebling's Bridge, LLC*, 540 S.W.3d 770, 777-78 (Ky. 2017)).

Liv Health and Tailor Made allege that, by engaging in all of the acts described in their Amended Counterclaims, Mr. Antonelli received a benefit at Liv Health's and Tailor Made's expense, and that Mr. Antonelli has inequitably retained the appreciating benefits of those

offending acts without payment to LIV Health or Tailor Made. *Id.* at ¶¶ 92-93. Mr. Antonelli argues that this counterclaim for unjust enrichment is inadequately pled for two reasons. First, Mr. Antonelli argues that Liv Health and Tailor Made fail to identify the precise "offending acts" from which Mr. Antonelli has been unjustly enriched. [R. 69 at 10.] Second, Mr. Antonelli argues the question of whether he impermissibly took the $100,000 is a contractual dispute. *Id.* Because, as Mr. Antonelli asserts, "unjust enrichment is unavailable when the terms of an express contract control[,]" his withdrawal of $100,000 cannot be the basis for an unjust enrichment claim. *Id.* (citing *Furlong Dev. Co., LLC v. Georgetown-Scott Cnty. Planning & Zoning Comm'n*, 504 S.W.3d 34, 40 (2016)).

Liv Health and Tailor Made respond to Mr. Antonelli's second argument by pointing to Rule 8's liberal pleading standards, which permits a party to bring forth as many claims or defenses as they may have, regardless of consistency. [R. 70 at 23 (citing Fed. R. Civ. P. 8(d)(2)-(3).] Indeed, "[a] plaintiff can pursue breach of contract and unjust enrichment as alternative theories of liability based on the same core facts, but cannot recover on both." *Walters*, 586 F. Supp. at 645 (citations omitted). Here, it may be the case that the counter plaintiffs' claims are decided on a breach of contract theory, thus precluding recovery for unjust enrichment. But at this stage, Liv Health and Tailor Made are allowed to pursue the alternative theory of unjust enrichment against Mr. Antonelli.

As for Mr. Antonelli's argument that Liv Health and Tailor Made fail to identify the "offending acts" from which Mr. Antonelli has been enriched, the Court finds the opposite to be true. Liv Health and Tailor Made incorporated all of the previously mentioned factual allegations into their unjust enrichment claim. [R. 68 at ¶ 92.] Those "offending acts" relate to Mr. Antonelli's withdrawal of $100,000 that LIV Health and Tailor Made claim to have a right

14

to.  The Court agrees with Liv Health and Tailor Made that Mr. Antonelli is undoubtedly on notice of the basis for the unjust enrichment claim brought against him.  [*See* R. 70 at 24.] Because Liv Health and Tailor Made may plead an unjust enrichment theory, Mr. Antonelli's motion to dismiss Count 5 must be denied.

**III**

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

1. Defendant Michael Antonelli's Motion to Dismiss Liv Health LLC's and Tailor Made Health LLC's Amended Counterclaim [**R. 69**] is **DENIED**;

2. Mr. Antonelli's preceding Motion to Dismiss [**R. 67**] is **DENIED as moot**.


This the 28th day of March 2024.

Gregory F. Van Tatenhove
United States District Judge